The 9th Circuit is now in session. Good morning, ladies and gentlemen. My colleagues, Judge Schroeder and Judge Bumate, and I all welcome you to the 9th Circuit. Just a few housekeeping matters before we start. Basically, I will call the matters in the order that they're on the calendar. We do have some submitted cases that I'll get out of the way first. If you are here for oral argument, you have a time designation by your case. And keep in mind that if you are the appellant or the petitioner, that that is your full time. So if you want to reserve any time for rebuttal, then you need to keep that in mind. I expect to be kept to your time. However, just like I know you have things that you're coming here to tell us, we consider oral argument our time as well. And I want to make sure that my colleagues have all of their questions answered, because we are going to be in a position of having to decide your case. So if the clock counts down, I'm looking at it, then it goes up. Just because it goes up doesn't mean you got extra time. It means you've moved into overtime and you're in danger of me calling time on you. But if any of my colleagues are asking you questions, you don't need to ask permission to continue to answer the questions. As long as my colleagues have questions, please answer those questions. So if you are the appellant and you want to keep time for rebuttal, you can aspirationally tell me how much you would like to reserve, because I'm looking at the clock and I'll try to remind you. But it is your responsibility to keep track of it. So the first submitted matter is Grimm v. Merrick-Garland, 22-709. That matter was submitted on the briefs, will be submitted as of this date. The second submitted matter is 22-711. Felicon v. Merrick-Garland, submitted on the briefs, will be submitted as of this date. We'll now move to argument. And the first matter on calendar for argument is United States of America v. Benjamin Morrow, 21-10242. And each side has 10 minutes. Good morning. Thank you. May it please the Court, I am Michael Becker, appearing on behalf of Benjamin Morrow.  Thank you. I'm going to start with the Fourth Amendment, because really that's what this is all about. And it's about the requirement before the issuance of a valid search warrant fundamentally and constitutionally that there be an oath or affirmation. And in this case, that did not occur. And it's the position of the appellant that that makes this warrant facially invalid. And it's demonstrated clearly by the record. When the JOP swore the affiant in, absolutely no facts were relayed to suggest that the warrant was true. The analysis on this hinges on one U.S. Code section and three cases that the parties have cited. I will note that in the lower court proceedings, there was discussion about 18 U.S.C. 1746. And the government basically conceded under 18 U.S.C. 1746, a declaration can be a proper attestation, but it must include the language specifically that the statements averred are true and correct. Our position is that the government should be stopped from asserting this argument because it was conceded. But regardless, even when you entertain that suggestion, there was no attestation here that the statements were true and correct. Not orally, when the affiant was interacting with the JOP, and not in the search warrant affidavit itself. The search warrant affidavit says the statements are made under penalty of perjury, but it does not say that the statements are true and correct. Well, penalty of perjury means you're not lying. So that's, you know, I mean, I think even after all of us watching TV shows, we know what perjury is. So under penalty of perjury means you're swearing that you're telling the truth and that you can be prosecuted for perjury, which is a crime. Well, if you say that you're making statements under penalty of perjury, the bottom line, Your Honor, is if you look at the case law and you look at 18 U.S.C. 1746, it prescribes exactly the language that is legally required. And if you look at the case cited by the government, United States v. Bueno Vargas, the court in that case references it must contain the statement true and correct. And the same in Stevenson, which is cited by the government. The language – Well, let me jump ahead. Let's say if we agree that the district court erred in concluding that the telephonic search warrant was valid as supported by an oath or affirmation. Couldn't we nevertheless affirm based on the good faith exception? And if so, why not? Well, I will say this, that this was something that was never discussed between the parties in the lower court. And I think that that allows this court to come to its own de novo conclusion with regard to whether good faith applies. But the defense perspective is if you look at the totality of the circumstance, and we get to at that point the nighttime search issue, we look at the overall picture here. What's going on? We've got agents, a federal agent in Reno, Nevada, that gets a call from federal agents in Ohio and then goes basically to a very rural local court and to a justice of the peace. The affiant in this case, in essence, does no independent investigation, notwithstanding claiming that they did their own investigation, relies virtually entirely on e-mails sent from a federal agent and information provided from a local federal agent that was not involved, writes out a search warrant, appellant cites to a number of problems with that warrant and with regard to good faith a number of reasons why the court should not consider this to have been done in good faith. Namely, in the execution of the search warrant, there were misleading statements that were included in the search warrant. Okay, so you traversed the warrant, correct? And the court made certain findings about the traverse. But I guess on the nighttime search, as to prejudice, I think what, you know, we don't discuss the case prior to coming in here, so we haven't conferenced on the case. But I was struck by that your client said how he was prejudiced. He could have been sleeping. He missed some sleep because they came at 1035 at night. That didn't seem to be a very strong argument for prejudice. Well, he was also roused out of his home under a ruse that his home had been vandalized in the middle of the night. It was cold outside. He was not fully dressed. And I know the district court said that, well, that the appellant didn't develop issue of prejudice, but abrasiveness is a factor as well. The language is if it's abrasive or there's prejudice. And our position is that it is inherently abrasive to be roused out, and that's why you need good cause to do a nighttime search. And I cite the case of Bravo v. City of Santa Maria, where the court talks about the inherent abrasiveness of nighttime search. Also, the Jones v. United States U.S. Supreme Court case. Well, in my view, possibly, and I want you to respond to that, and I'm going to ask the other side to respond, that maybe the strongest argument that you have would be that the affidavit supporting this search warrant represented that Mr. Mora was with a child, quote, unquote, when, in fact, he did not presently have a child with him. So it wasn't true he was with a child. But it had to be evaluated in light of some pretty explicit and demanding communications that had gone on talking about his niece and what was going to occur and, obviously, as far as that goes. What do you want to say anything about that? Here's where we get to the recklessness involved here. Because the district court ordered a Franks hearing specifically to address this issue, but then when appellant sought to cross-examine the declarant of the statement, an essay reddick about that statement, the court precluded appellant from doing so. And this was particularly significant because I would suggest to the court that saying to a magistrate that a person who is suspected of being a child predator, perhaps, is with a child, is the equivalent of yelling fire in a crowded theater. And you can't just say that they're with a child and then say, never mind, even if later in the affidavit is included contradictory information. I would suggest that even though we expect a magistrate to be a neutral, that a magistrate is also susceptible to psychological vulnerability. And this was a very lengthy search warrant application. When the magistrate saw that language. But the other communications that went on where he said that his niece was coming and he used, you know, pretty offensive language, quote, unquote, that she was a, I'm going to put a quote, unquote, fectoy, and it was imminently happening, what did the record say about that? Well, the record did say that essay reddick was in touch with the agents in Ohio while the warrant was being prepared. And approximately three hours before the warrant issued, she got a text saying, because agents in Ohio were communicating with the suspect, who was unsub, that the niece wasn't coming until Wednesday. And that's the omission. She acknowledged in her text response, got it. She never provided that information to the affiant. And had that information been provided, there would have been no good cause for the nighttime search. And we believe that shows recklessness, which undermines any claim of good faith. And, Your Honor, to the extent that I've reserved my time. I'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court. Peter Walkinshaw on behalf of the United States. The agents in this case worked quickly to obtain a warrant to search Mr. Morrow's home because they had to, given the information that he had given to them, that he would imminently have a child victim subject to his abuse. And Morrow raises a number of technical complaints about the contents of the warrant and the way that it was sworn out. But it bears emphasizing that the entirety of this search warrant procedure, from Sergeant Powell's introduction of the case to the completion of the search, took place in less than nine hours. And it was done on an exigent basis for the purpose of protecting the safety of a child from sexual abuse. Right. Well, there was no question that there was information that there was going to be a child there. But the argument is that there was no good information that there was a child there at the time to justify a nighttime search. So that the burden is not whether there was probable cause for a search, but a nighttime search. So can you address that? Well, Your Honor, I believe starting first with the statement that Judge Calhoun asked about earlier regarding that, I'm going to read from the warrant here, is that Special Agent Rettig advised that she received information that the subject in her case is with a child. That's the statement in the warrant. The warrant then goes on to detail what that information is specifically and allow the magistrate to come to an independent conclusion as to whether or not the risk of a child being subject to sexual abuse at that time is warranted. Ultimately, given the information in the warrant, Judge Castlebaum made the conclusion that there was enough risk here to warrant a go-ahead at night. But at the Franks hearing, there were admissions that – well, there were questions, I think, of two agents. Correct, Your Honor. So – and they basically – one said he didn't know – well, either he didn't – he wasn't aware of the information that there wasn't a child and then I think the woman agent that counsel for the appellant mentioned didn't remember. So taking a brief step back, Your Honor, yes, you referred to – there was a statement that Morrow relayed to the undercover that the child would be there maybe Wednesday, not 100 percent sure, though. Now, a few things there. One, I don't think that, as the agents testified and as the court found, doesn't really radically alter the exigency of the search as presented in the warrant, given that it already says that the child would be arriving sometime this week. Now, Sergeant Powell testified, and I think this is important testimony, that child sexual abuse offenders will often lie to their interlocutors when trying to negotiate for additional CP or potential sexual abuse – additional access to sexual abuse. The agents couldn't necessarily take representations that the child wasn't there at that time at face value. Was that allegation in the affidavit? That the – That child pornographers lie about – No, Your Honor, it was not. It came out in testimony as part of the – as part of the Franks hearing. But I think it goes to the good faith of these agents as to why they thought. This was really – I think it's worth remembering. Can you explain what was the actual information that Mr. Morrow was with a child? I didn't see it. So in the warrant, it details that, one, he's sending them repeatedly images that are consistent with the description of what appears to be his niece, repeated images of a sexual assault victim that bears certain similarities. So the idea was those photos were being contemporaneously taken? No, Your Honor. So he was representing that they were historical. But what he said was, I'm going to – on the day that the agents leapt into action to try and execute the search as quickly as possible, what he said was, I'm going to see my niece for spring break. He says some extremely vulgar and explicit things about what's going to happen when he sees her. He won't repeat them before this court. They're in the briefs. But it's clear that he was representing the agents that he was going to see. Going to see, though. Yes, that's correct. So, I mean, the with child was inaccurate to wait. Well, I think so, Your Honor. I think – well, the with child statement is information that he is with a child. Right.  The reason why – it says that Special Agent Rettig gave him information that Mr. Morrow, or the subject, was with a child. And then it details the communications that the agents had with Mr. Morrow over the course of these several days. So it gives the magistrate, as required by the Fourth Amendment and warrants for hiring procedures, the information he needs to come up with his own conclusion. Is the risk that they're worried about here justified? I think it's well justified, given the fact that he is representing and providing some bona fides. I have a victim here, explicit pictures of that victim. I'm going to see her soon. And this is during a negotiation for reciprocity from what he believed to be a citizen witness, but was in fact – So in a Franks hearing when you traverse the warrant, you isolate the statements that either were omitted or misrepresented or whatever. What did the district court find there? And what – because he wasn't with a child. Correct. So did the district court say that that was a misrepresentation or there was an omission that he – Specifically, Your Honor, what the district court found was that there was no intentional or reckless misleading of the magistrate. So I think the key thing here is that not only when you traverse the warrant do you identify things that may be misleading or false statements or omissions, but you also have to go through the calculus of is it material, which in this case the district court said it only paints a slightly different picture of urgency, and was it done with reckless disregard for the truth or intentionally to mislead the magistrate? And I think it's important to – So was it material seems to me is a legal matter. Correct. That's correct, Your Honor. I mean, when we look at that, was it intentional? There was a factual determination. That's a factual determination. That's correct, Your Honor. So unless that's not supported – That's correct, Your Honor. It's subject to a clear error determination, and with respect to Agent Rettig's testimony that she didn't remember receiving the notch, maybe Wednesday, not 100% sure though text, the judge made a credibility finding. So in its decision, the district court outlined Mora's position that he felt that this was done, you know, recklessly and was – But the materiality would be de novo, right? That's correct, Your Honor. But again, the credibility finding that Special Agent Rettig didn't remember this and would not have intentionally withhold it if she was aware of it, the court credited that information. So that, beyond clear error, this court reviews with special deference, given the fact that the court below heard the testimony, you know, examined the witness. So, counsel, what I am hearing from you is that you accept the fact that there was not a sufficient showing of information that would justify a nighttime search, but that it was – the district court found that there was no bad faith. It was in good faith. I beg your pardon, Your Honor. I think I'm giving you the wrong impression. Absolutely good faith, but I think this is more than enough for good cause for a nighttime search. Again, the good cause standard is a capacious one. It's not specifically defined in Rule 41, but everywhere in the law, in the circuit, it allows all kinds of scenarios and situations. And the risk that a child would be sexually assaulted, even if it's not a certain one, I think is more than enough. Are you saying that it's enough that they knew that there was going to be a child, that that was accurate? Because the fact that, A, there was no child, and B, nobody actually saw a child there. That's correct, Your Honor. But given the representations that the defendant made that a child was coming and that when that child came, that child would be sexually assaulted, I think the risk there, it can't be that the agents would need to be absolutely certain as to what's going on. They can't wait for this to happen, effectively. They need to be able to mitigate the risk. But they can barge in in the middle of the night if they know that – if they have information that a child is coming on her vacation. That doesn't sound right to me. I think it's enough to justify a nighttime search, given that it's not just the child's coming on vacation, but when the child gets there, she'll be subject to an assault. Morrison may be Wednesday, right, when the child was coming? And when was this warrant executed? Saturday night, Your Honor. So Saturday. So that's five days, maybe. But again, the representation was – and this part is already in the warrant – sometime this week. This week. Not sure when. So the idea that the fact that Morrow is representing the child is not there currently, which, again, the agents are not inclined to give him the benefit of the doubt, has already been disclosed to the magistrate. And the further information is maybe it's Wednesday. I don't really know. And he had supplied photos with the child that they presumed to be the niece? That's correct, Your Honor. And those photos would be such that it was clearly a dangerous act for – danger for a child. They were sexually explicit penetrative images of a prepubescent female. Can I ask, is that – that possession of child pornography, is that enough to justify the nighttime search? Because, you know, he might be distributing it all night, and that's an injury to the victim. I don't think that that was the basis for the warrant in this case, Your Honor. Right. You know, they've been discussing – Morrow had been messaging with undercovers for several days prior. Really, the reason – and it's very clear – the reason the agents did this is because they were worried about a child. But your view, the distribution of child pornography overnight is not enough for a nighttime – I don't think that was the basis it was sought in this case. I don't want to say that it never could be, but I think in this particular case, it was not the basis for the nighttime justification. I think it's much more so – after the search was completed at Morrow's house, they went to his parents' house to make sure that she wasn't there either. Let me ask – you're over your time, but let me find out if my colleagues have any additional questions. They don't. So take 15 seconds and wrap up. I mean, I think that if the Court has no more questions, I think it's just the agents in this case were sincerely concerned about the welfare of a minor subject to sexual assault. If that isn't good cause, I simply don't know what it is. It may be good faith. Yes, Your Honor. Thank you for your time. With that, we'll submit. Thank you. Regarding the agents being sincerely concerned about the welfare of a child, what's particularly intriguing here is that the search warrant makes no mention of seeking to search for a child in the home. Absolutely no mention of it whatsoever. And what's also important here is that the agents were surveilling the subject target home in the time leading up to the search. And they didn't see anything corroborating that there may be a child in the home. And yet, they omitted that from their search warrant affidavit. There's no mention that they had been surveilling the home and they didn't see a child. I also think it's important to point out that they made no investigation to even determine whether Mr. Murrow had a niece, which he didn't. And that's why this was a reckless endeavor. And I will note in terms of the district courts. I'm sorry. He didn't have a niece? So who is the girl in question? Well, I would proffer that the images that were sent were known images of CP that are actively traded online. When the agents were asked if they were known images at the Franks hearing, they said they didn't know. But no evidence was developed ever showing that Mr. Murrow had a niece or that these were pictures of his niece. Your Honors, I would just finally point out the following. You know, appellant gets accused of being hyper-technical and fly-spec-y. But even this court has standards that are very technical when you file your affidavits. If you don't do it right, the clerk rejects your filing. And I would suggest here that this was not done right. And this court should hold law enforcement agents who are out there trifling with individuals' constitutional rights to a higher standard. And that's why I'm asking the court to find an appellant's favor. Thank you. All right. Thank you both for your arguments in this matter. It will stand submitted.
judges: SCHROEDER, CALLAHAN, BUMATAY